**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JNS POWER & CONTROL SYSTEMS, INC., an Illinois Corporation | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| 350 GREEN, LLC, a Virginia limited liability company | ) ) ) |
| Defendant. | ) ) |

## COMPLAINT AND JURY DEMAND

Plaintiff, JNS Power & Control Systems, Inc., by and through its attorneys, Hogan Marren, Ltd., and for its Complaint against Defendant, 350 Green, LLC, alleges as follows:

## JURISDICTION AND VENUE

1.     Jurisdiction is proper in this Court, on Count I of this Complaint, pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between all parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This Court has supplemental jurisdiction on Count II of this Complaint, pursuant to 28 U.S.C. § 1367.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), as the contract at issue was entered into and the goods at issue are located within this District.

## THE PARTIES

3.     Plaintiff JNS Power & Control Systems, Inc. ("JNS"), is an Illinois corporation with a principal place of business in Arlington Heights, Illinois.

4.     Defendant 350 Green, LLC ("350 Green") is a Virginia limited liability company with principal places of business in California.

## **BACKGROUND FACTS**

5.      JNS is a service provider for electric vehicle ("EV") charging stations.

6.      In December 2012, JNS and 350 Green, a company that also installs and provides service for EV charging stations, entered into negotiations for JNS's purchase of certain assets of 350 Green, namely: one-hundred-sixty-eight (168) completed and installed electric car chargers and fifty-one (51) Coulomb or equivalent Level II Chargers (the "Chargers").

7.      The one-hundred-sixty-eight (168) completed and installed electric car chargers are unique in nature as each had been previously installed at locations throughout the Chicago area.

8.      On or about February 11, 2013, JNS and 350 Green entered into a Formal Letter of Intent ("LOI") for JNS to acquire the Chargers and the right to request the consent of the City of Chicago to assign the existing Grant Agreement from 350 Green.  A true and accurate copy of the LOI is attached hereto as Exhibit A.

9.      On or about April 17, 2013, JNS and 350 Green ultimately entered into an Asset Purchase Agreement ("APA").  A true and accurate copy of the APA is attached hereto as Exhibit B.

10.      The Purchase terms of the APA are set forth in Article 2 and required JNS and 350 Green to perform as follows:

2.2    [350 Green] shall assign all of its contractual rights and interest in the Department of Energy First Amended and Restated Grant Agreement Award No. DE-EE0002541, with the City of Chicago to [JNS] ("Grant").

2.3    [350 Green] shall issue to [JNS] a Bill of Sale, an Assignment of all existing warranties or guarantees and any other documentation necessary to transfer ownership in this property to [JNS].

2.4    [350 Green] shall also assign to [JNS] any license, easement, rental, leases, or permit agreements currently in existence or to be negotiated with the property owners for the sites where the chargers are currently installed or to be installed.

2.5    [350 Green] shall transfer rights to [JNS] for fifty-one (51) Coulomb Chargers or equivalent on the date of closing.

2.6    For and in consideration of the purchase of the above assets, [JNS] shall: (a) complete the Grant work that remains· unfinished pursuant to the City's directive and instruction consistent with the terms of the Grant agreement (Exhibit 2.2); and (b) [JNS] will settle, pay or negotiate with all unpaid creditors of [350 Green] from the project related to Exhibit 2.6A that are directly related to the City of Chicago grant-related funds and obtain releases from the same.

2.7    [350 Green] shall assign and [JNS] shall accept and acknowledge the assignment of all Licenses for locations of the assets set forth in Exhibit 2.1. [350 Green] shall provide any and all Licensor consents required pursuant to such Licenses.  If needed, [350 Green] will assist in transfer of unsigned license agreements, provide contact information and make email introductions to potential and existing hosts.  [350 Green] will also make introductions to existing charging stations manufacturers and network operators.

11.    The cost of JNS's performance to complete the Grant work that remains unfinished and to settle, pay, or negotiate with all unpaid creditors, as required by the APA, is greater than $75,000.00.

12.    The  value of the one-hundred-sixty-eight (168) completed and installed electric car chargers and the fifty-one (51) Coulomb or equivalent Level II Chargers described in Section 2.5 of the APA is greater than $75,000.00.

13.    The APA was "contingent upon the City of Chicago's agreement to allow [350 Green] to assign the remaining benefits and obligations associated with the Grant to [JNS] prior to the closing of the transaction or concurrent with this transaction."  Exhibit B, ¶2.10.  The value of the City of Chicago Grant is greater than $75,000.00.

14.    In Paragraph 3.9 of the APA, 350 Green affirmed the following:

[350 Green] has the necessary power, authority and capacity to enter into this Agreement and carry out [350 Green's] obligations contemplated hereby, without the necessity of any act or consent except as provided in Exhibit 3.9A of any other person or entity, and that this Agreement constitutes a legal, valid and binding obligation of [350 Green], enforceable against [350 Green] in accordance with its terms.

15.     As early as December 2012, JNS inquired as to the necessary requirements of the City of Chicago to obtain their consent to the assignment of the Grant benefits and obligations to JNS from 350 Green and took steps to fulfill each of the City of Chicago's requirements.

16.     On April 30, 2013, via a letter from Amber Achilles Ritter, the City of Chicago granted its approval of the APA and assignment of the Grant benefits and obligations to JNS.  A true and accurate copy of the April 30, 2013 letter is attached hereto as Exhibit C.

17.     The APA states that the Closing would take effect in two phases: (1) upon signing the Agreement; and (ii) when the contingencies set forth in this Agreement have been satisfied." Exhibit B, ¶2.12.

18.     JNS satisfied all contingencies and obligations required by the APA.

19.     On May 6, 2013, JNS sent a demand letter to 350 Green requesting 350 Green perform fully in accordance with the terms of the APA.

20.     To date, 350 Green has failed to perform as required by the APA and has failed to provide JNS with any grounds that would explain or excuse 350 Green's failure to perform.

## COUNT I
### (Breach of Contract – Specific Performance)

21.     Plaintiff hereby incorporates by referenced Paragraphs 1 – 20, as if fully restated herein.

22.     The APA constitutes a valid and enforceable contract between JNS and 350 Green.

23.     JNS fully and timely performed under the terms of the APA.

24.     350 Green has failed or refused to perform its obligations under the APA. Specifically, 350 Green has failed to:

> (a)     Deliver assignments of or a consent to the Assignments of all licenses for the locations listed in the APA Section 2.1, as well as any licenses, easements, rentals, leases or permit agreements currently in existence or to be negotiated with property owners for the sites currently installed or to be installed;
> (b)     Deliver a Bill of Sale and an Assignment of all existing warranties or guarantees including any other necessary documentation necessary to transfer the ownership of all assets including the one hundred sixty eight (168) completed and installed electric car chargers and fifty one (51) Coulomb or equivalent Level II Chargers to JNS, as provided for in the APA; and
> (c)     Provide a full release and Indemnification from 350Green for all claims, agreements, debts, expenses and related charges between 350Green and Actium Power.

*See* Exhibit B, Sec. 2.

25.     The one hundred and sixty-eight (168) chargers which have been installed under licenses at specific locations are unique and cannot be removed or otherwise replaced without materially affecting the consideration contemplated by the parties to the APA.  Exhibit B, ¶2.1; Ex. 2.1.

26.     The remaining fifty-one (51) chargers identified in the APA were an integral part of the consideration contemplated by the parties and cannot be replaced.  Exhibit B, ¶2.1.

27.     Assignment and ownership of the Chargers is necessary for JNS to "complete the Grant work that remains unfinished pursuant to the City's directive and instruction consistent to the terms of the Grant agreement," as required by ¶2.6 of the APA.

28.     As a result of 350 Green's failure to perform under the APA, JNS can neither perform the obligations necessary under the Grant nor receive the benefits of the Grant, as intended by the terms of the APA.

29.     Monetary damages are inadequate for JNS, as monetary damages based on 350

Green's failure to perform are difficult to quantify.

WHEREFORE JNS requests that this Court enter judgment in its favor and against 350

Green:

(A)     Granting JNS specific performance of the APA, requiring 350 Green to perform fully as required under the APA;

(B)     Awarding JNS its attorney's fees and costs; and

(C)     Awarding any and all other relief that this Court deems equitable and just.

## COUNT II
### (Breach of Contract – Indemnification)

30.     Plaintiff hereby incorporates by referenced Paragraphs 1 – 20, as if fully restated herein.

31.     The APA constitutes a valid and enforceable contract between JNS and 350 Green.

32.     JNS fully and timely performed under the terms of the APA.

33.     Pursuant to Paragraph 3.2, 350 Green agreed to indemnify JNS as follows:

3.2.     350 Green hereby agrees to defend, hold harmless and expeditiously indemnify JNS from, against and with respect to any and all liability, claim, loss, damage, obligation, cost or expense arising out of the 350 Green's material breach or violation of any representation, provision, warranty, or covenant contained in this Agreement, including reasonable attorneys' fees, and other reasonable costs incurred in the defense of any legal proceedings asserting such a claim.

3.3.     350 Green hereby agrees to indemnify and hold Buyer harmless from any and all liability, action, lawsuit, expenses or damages directly associated with CCGI's failure to close the Equity Exchange Agreement, dated March 8, 2013, with 350 Green; provided, however, that 350 Green shall not indemnify or hold harmless Buyer from any and all liability, action, lawsuit, expenses or damages involving: (a) JNS's independent interaction with CCGI that was initiated either: (i) by JNS with CCGI or (ii) by CCGI with JNS, or (b) JNS's independent interaction with any third party such as the City of Chicago and EFACEC, in relation to the Grant. Seller further agrees to indemnify and hold JNS harmless from any and all liability, action, lawsuit, expenses or damages directly in relation to any and all creditors of Seller who have been identified by 350 Green and disclosed by 350 Green to JNS in relation to the Grant and as set forth in Exhibit

6

2.6A.

34. On April 10, 2013, the Car Charging Group, Inc. ("CCGI"), filed a complaint in the District Court for the Southern District of New York, which named JNS and JNS Holding Corporation as defendants (SDNY Case. No. 13cv2389) ("SDNY Complaint").

35. JNS incurred expenses and attorney's fees and costs in defense of the SDNY Complaint totaling in excess of $15,000.00

36. 350 Green agreed to indemnify and hold harmless JNS from "any and all liability, action, lawsuit, expenses or damages directly associated with" the SDNY Complaint.

37. On May 2, 2013, JNS was served with a complaint filed by CCGI, in the District Court for the Northern District of Illinois, on April 25, 2013 ("CCGI Complaint").

38. The CCGI Complaint names JNS and JNS Holding Corporation as defendants and asserts claims for tortious interference with contractual relations and seeking a declaratory judgment finding the APA null and void.

39. JNS has incurred expenses and attorney's fees and costs as a result of the CCGI Complaint.

40. On April 29, 2013, JNS sent a demand letter to 350 Green requesting 350 Green indemnify JNS as required by the terms of the APA, with respect to both the SNDY Complaint and the CCGI Complaint.

41. To date, 350 Green has failed or refused to indemnify JNS, as required by the APA.

42. JNS has incurred expenses and attorney's fees and costs as a result of 350 Green's material breach of the APA.

43. As a result of 350 Green's failure to indemnify JNS, JNS has incurred, and will

continue to incur, damages, expenses, and attorney's fees and costs associated with both the

SDNY Complaint and the CCGI Complaint, as well as the instant complaint.

WHEREFORE JNS requests that this Court enter judgment in its favor and against 350

Green:

(A)     Ordering 350 Green to fully indemnify JNS from expenses and legal fees and costs associated either the instant lawsuit, the SDNY Complaint, or the CCGI Complaint.

(B)     Awarding JNS its attorney's fees and costs; and

(C)     Awarding any and all other relief that this Court deems equitable and just.


Respectfully submitted,

JNS POWER & CONTROL SYSTEMS, INC.


By:     s/ Evan J. Haim
            One of Their Attorneys

Patrick E. Deady
Kelly McCloskey Cherf
Evan J. Haim
Hogan Marren, Ltd.
321 N. Clark Street, Suite 1301
Chicago, IL  60654
312-946-1800

# EXHIBIT A

TO: 350 GREEN LLC

DATE: 2/10/13

## LETTER OF INTENT BETWEEN PARTIES

This letter will serve to memorialize the basis of the agreement between the parties, JNS Power & Control Systems, Inc. (hereinafter referred to as "JNS") and 350 Green LLC to date. The information provided thus far has been provided in good faith and on that basis the parties have commenced undertaking the terms and conditions contained herein. If the representations contained herein change or the undertaking substantially differs with what has been represented to JNS by 350 Green LLC, JNS will terminate all efforts to take over the grant project with the City of Chicago.

As of this date, JNS proposes to undertake to complete the Department of Energy Grant work with the City of Chicago for 350 GREEN LLC, in exchange for the property identified herein as: all completed electric car chargers to date for a total of One hundred sixty eight (168) and One hundred and six (106) chargers to be installed. The property will be assigned to JNS by 350 GREEN LLC with all right, title and interest.

In consideration for the sale of the property JNS will settle, or compromise with the outstanding contractors or creditors of 350 Green LLC, that as of this date have been identified, and obtain full releases of their claims. 350 Green LLC has represented that the amount of indebtedness to be 1.5 million dollars. (See attached Ex. "1" outlining current debtors).

JNS, on behalf of itself and its agents and representatives, acknowledge that certain information that has been or will be disclosed by 350 GREEN LLC is proprietary and includes confidential information. Buyer will hold information regarding the Chicago DOE grant and 350 GREEN LLC in confidence and shall not disclose it to any Person OR ISSUE PRESS RELEASES BEFORE the Closing without the written approval of 350 GREEN LLC; provided, however, that the foregoing restriction shall not apply to any information that is or becomes publicly known, or that is required to be disclosed by Law. JNS can disclose information regarding this LOI, provided however JNS provides a copy of disclosure to 350GREEN LLC in advance.

This letter of intent is contingent upon all of the above conditions being met and in addition the City of Chicago's approval of JNS as the new contractor on the Department of Energy project. All parties agree to continue to negotiate in good faith and to keep all terms contained herein confidential until otherwise mutually agreed upon.

The parties will commence the negotiation of a definitive written Asset Purchase Agreement memorializing the terms and conditions of the purchase and sale of Assets and the business as described herein as soon as practical after the date hereof. The Asset Purchase Agreement will include warranties, representations, covenants and conditions which are customary for a sale of the assets of a business involved in the distribution of electricity to the public to fuel electrical motor vehicles through the use of Charging Stations. The Asset Purchase Agreement will also contain an indemnity typically negotiated for similar transactions.

Closing will take place on or about March 31, 2013 at a mutually agreeable location. Closing can be continued with the mutual agreement of JNS and 350 GREEN LLC.

The parties executing this Letter of Intent have the authority and capacity to do so and make that representation to each other in good faith.

By: _____

CEO.

JNS POWER & CONTROL SYSTEMS, INC.

2/10/13

By: _____

Tim Mason

President

350 GREEN LLC

# EXHIBIT B

## ASSET PURCHASE AGREEMENT

The undersigned parties, 350 GREEN, LLC ("Seller") and JNS POWER & CONTROL SYSTEMS, INC. ("Buyer") (each a "Party" and together the "Parties") hereby enter into this ASSET PURCHASE AGREEMENT (hereinafter referred to as "Agreement") on this    the 17th day of April, 2013, and agree to the following terms and conditions:

### 1.0    REPRESENTATIONS AND WARRANTIES:

1.1    Both Seller and Buyer warrant and represent that the individuals executing this Agreement have the requisite authority and to enter into this Agreement; and

1.2    Seller represents and warrants that they have terminated all other prospective terms sheets or proposals with any other entity, specifically CAR CHARGING GROUP, INC. ("CCGI"), for the purchase of the assets that are defined herein and that are being sold herein; and

1.3    Buyer represents that it has not contributed in any way to the termination of that relationship or interfered with the CCGI relationship; and

1.4    Both Buyer and Seller acknowledge that this Agreement is conditioned upon the City of Chicago's acceptance of the terms and conditions set forth in this Agreement; and

1.5    Both Parties agree to the following terms and conditions contained herein.

### 2.0    PURCHASE TERMS:

2.1    At the Closing (as defined in this Agreement), subject to the performance of the duties set forth below, Buyer shall buy and Seller shall sell, assign, convey, transfer, set over and deliver by appropriate transfer to Buyer all of the assets, rights, and interests of every conceivable kind or character whatsoever, whether tangible or intangible for the following property ("Assets"):

-    one hundred sixty-eight (168) completed and installed electric car chargers at the attached list of property sites and see **Exhibit 2.1**; and

-    Fifty-one (51) Coulomb or equivalent Level II Chargers to be installed.

2.2    Seller shall assign all of its contractual rights and interest in the Department of Energy First Amended and Restated Grant Agreement Award No. DE-EE0002541, with the City of Chicago to Buyer ("Grant"). A copy of the Grant and related specifications are attached hereto as **Exhibit 2.2.**

2.3    Seller shall issue to Buyer a Bill of Sale, an Assignment of all existing warranties or guarantees and any other documentation necessary to transfer ownership in this property to Buyer.

2.4    Seller shall also assign to Buyer any license, easement, rental, leases, or permit agreements currently in existence or to be negotiated with the property owners for the sites where the chargers are currently installed or to be installed.

2.5    Seller shall transfer rights to Buyer for fifty-one (51) Coulomb Chargers or equivalent on the date of closing.

2.6     For and in consideration of the purchase of the above assets, Buyer shall: (a) complete the Grant work that remains unfinished pursuant to the City's directive and instruction consistent to the terms of the Grant agreement (**Exhibit 2.2**); and (b) Buyer will settle, pay or negotiate with all unpaid creditors of the Seller from the project related to **Exhibit 2.6A** that are directly related to the City of Chicago grant-related funds and obtain releases from the same. A copy of the release agreement for use with such creditors is attached as **Exhibit 2.6B** ("**Release**"). Those creditors have been provided by Seller and Seller has represented to Buyer that there are no additional creditors that are owed moneys with respect to the Grant. The names and amount owed to the creditors are itemized on the list which is attached hereto as **Exhibit 2.6A**.

2.7     Seller shall assign and Buyer shall accept and acknowledge the assignment of all Licenses for locations of the assets set forth in **Exhibit 2.1**. Seller shall provide any and all Licensor consents required pursuant to such Licenses. If needed, Seller will assist in transfer of unsigned license agreements, provide contact information and make email introductions to potential and existing hosts. Seller will also make introductions to existing charging station manufacturers and network operators.

2.8     This Agreement specifically excludes any solar work for the City of Chicago or any other entity.

2.9     Buyer acknowledges that there are outstanding liabilities of One Million Six Hundred Seventeen Thousand Forty Dollars and 73/100th ($1,617,040.73.) Buyer represents and warrants that settlement payments will be made for outstanding liabilities not to exceed the amount herein stated to all creditors of the Seller that have been disclosed on **Exhibit 2.6A**, as consideration for the assets purchased by Buyer and described herein.

2.10     This Agreement is contingent upon the City of Chicago's agreement to allow the Seller to assign the remaining benefits and obligations associated with the Grant to Buyer prior to the closing of this transaction or concurrent with this transaction. The list of the locations covered by the Grant is attached hereto as **Exhibit 2.1** . Only those locations set forth in **Exhibit 2.1** are covered by this Agreement. This Agreement is further contingent upon proof by Seller that the rights to fifty-one (51) Coulomb or equivalent Chargers transferred to the Buyer.

2.11     EXCEPT FOR ANY LIABILITIES SPECIFICALLY ASSUMED HEREUNDER, BUYER SHALL NOT ASSUME NOR SHALL BUYER BE OBLIGATED FOR ANY OTHER LIABLITIES OR RESPONSIBILITIES WHATSOEVER OF SELLER OR THE BUSINESS AS CONDUCTED BY SELLER THROUGH THE CLOSING DATE.

2.12     Closing ("**Closing**") will take place in two parts: (i) upon signing the Agreement; and (ii) when the contingencies set forth in this Agreement have been satisfied on or about April 11, 2013 ("**Closing Date**"). Closing can be continued with this mutual agreement of Buyer and Seller. At the time of the Closing, Seller agrees to provide the following to Buyer: (a) a Full Release and Indemnification from Seller to Buyer for any and all agreements, debts, charges, expenses or claims between Seller and Actium Power; (b) consent for license assignments from host partners and (c) Seller shall execute and deliver to Buyer on the Closing Date, a Bill of Sale for the Assets and all Assignments provided for in this Agreement.

### 3.0     MISCELLANEOUS PROVISIONS:

3.1     This Agreement shall be governed under the laws of the State of Illinois.

3.2   The Seller hereby agrees to defend, hold harmless and expeditiously indemnify Buyer from, against and with respect to any and all liability, claim, loss, damage, obligation, cost or expense arising out of the Seller's material breach or violation of any representation, provision, warranty or covenant contained in this Agreement, including reasonable attorneys' fees, and other reasonable costs incurred in the defense of any legal proceeding asserting such a claim.

3.3   Seller hereby agrees to indemnify and hold Buyer harmless from any and all liability, action, lawsuit, expenses or damages directly associated with CCGI's failure to close the Equity Exchange Agreement, dated March 8, 2013, with Seller; provided, however, that Seller shall not indemnify or hold harmless Buyer from any and all liability, action, lawsuit, expenses or damages involving: (a) Buyer's independent interaction with CCGI that was initiated either: (i) by Buyer with CCGI or (ii) by CCGI with Buyer; or (b) Buyer's independent interaction with any third party such as the City of Chicago and EFACEC, in relation to the Grant. Seller further agrees to indemnify and hold Buyer harmless from any and all liability, action, lawsuit, expenses or damages directly in relation to any and all creditors of Seller who have been identified by Seller and disclosed by Seller to Buyer in relation to the Grant and as set forth in Exhibit 2.6A.

3.4   This Agreement embodies the entire agreement and understanding among the Parties hereto regarding the subject matter hereof, and replaces and supersedes any prior agreements between the Parties, oral or written, related to the subject matter hereof.

3.5   The Seller hereby agrees that Buyer shall be entitled to assign this Agreement to a subsidiary of Buyer and that such assignee shall be an authorized assignee of Buyer; provided, however, that Buyer shall notify Seller in writing of such assignment. Except to the extent of any contrary provisions herein, all of the terms of this Agreement, whether so expressed or not, shall be binding upon the respective successors and assignees of the Parties hereto, and shall inure to the benefit of, and shall be enforceable by the Parties hereto and their respective heirs, executors, personal representatives, successors and assigns.

3.6   In the event any section or part of this Agreement or any of the attached exhibits or parts thereof should be adjudged invalid, such adjudication shall in no manner affect the other sections or exhibits, which shall remain in full force and effect as if the section or exhibit so declared or adjudged invalid were not originally a part hereof unless the section or exhibit so declared or adjudged invalid materially affects the consideration or obligation either Party is entitled to receive or assume hereunder.

3.7   Any notice or payment required or permitted in this Agreement and the attached exhibits shall be in writing and delivered personally or sent by certified U.S. Mail, return receipt requested, with all postage and other charges pre-paid. Any such notice or payment from Seller to Buyer shall be addressed to the principal office of Buyer. Any such notice or payment from Buyer to Seller shall be personally hand delivered to Seller or addressed to the last known residential address of Seller.

TO BUYER:                                    TO SELLER:
JNS Power & Control Systems, Inc.            350 GREEN, LLC
c/o Brian Howe                               Mariana Gerzanych
3339 North Ridge Avenue                      26092 Cresta Verde
Arlington Heights, IL 60004                  Mission Viejo, CA 92691
brianhowe@jnspower.com                       mg@350Green.com
Tel: (847) 577-3572                          Tel: (301) 613-8550

BUYER ATTORNEY:                              SELLER ATTORNEY:
Colleen M. Loftus                            DLA Piper LLP (US)
646 Busse Highway                            701 Fifth Avenue, Suite 7000
Park Ridge, IL 60068                         Seattle, WA 98104
cloftus@loftusloftus.com                     Attn.: John F. Pierce, Esq.
Tel: 847-318-8800                            John.Pierce@dlapiper.com
                                             Tel: (206) 839-4875

   3.8   All representations, covenants, warranties, obligations, indemnification, rights and
responsibilities made or undertaken in this Agreement and its exhibits, or in any document or instrument
executed and delivered pursuant hereto shall survive the Closing. Time is of the essence with respect to all
provisions of this Agreement (and its exhibits) that specify a time for performance; provided, however, that
the foregoing shall not be construed to limit or deprive a Party of the benefits of any grace or use period
allowed in this Agreement.

   3.9   Seller has the necessary power, authority and capacity to enter into this Agreement and
carry out Seller's obligations contemplated hereby, without the necessity of any act or consent except as
provided in **Exhibit 3.9A** of any other person or entity, and that this Agreement constitutes a legal, valid
and binding obligation of Seller, enforceable against Seller in accordance with its terms:

        (i)     Seller is the sole lawful owner of the Assets;

        (ii)    except as disclosed on **Exhibit 3.9B**, Seller shall not be in material default under
any contract, lease or any other commitment whatsoever which might reasonably be expected to result in a
material and adverse effect, either directly or indirectly, Buyer or the Assets; all applicable laws and
regulations shall be complied with by Buyer and Seller;

        (iii)   except as disclosed on **Exhibit 3.9C**, there are no pending proceedings, state or
federal which would effect, prevent or delay the contemplated transaction;

        (iv)    Buyer and Seller agree that no publication will be made concerning this
transaction and that this transaction shall remain confidential between the Parties. Disclosure of the
transaction must be mutually agreed upon in writing. Nothing herein shall prevent the Seller from
fulfilling any legal disclosure obligations; and

        (v)     Buyer has the necessary capacity to enter into this Agreement and carry out its
obligations contemplated hereby, without the necessity of any act or consent of any other person or entity,
and that this Agreement constitutes a legal, valid and binding obligation of Buyer, enforceable against
Buyer in accordance with its terms.

   3.10  In the event Buyer defaults under its obligations to the City of Chicago in relation to
Buyer's assumption of the Seller's obligations under the Grant and as a direct result of such default, the

liabilities of Seller and of Seller's members (Mariana Gerzanych and Tim Mason ("Members")) to the City of Chicago or any third party are increased, Buyer agrees to indemnify and hold harmless Seller and its Members, against and in respect of all any and all damages, losses, settlement payments, deficiencies, liabilities, costs, expenses and claims suffered, sustained, incurred or required to be paid by Seller and its Members, and any and all actions, suits, claims, or legal, administrative, arbitration, governmental or other procedures against Seller and/or its Members, which arises or results from Buyer's failure to perform its obligations under the assumed Grant. In the event a third party assumes the obligations of the Grant from Buyer, Buyer shall procure continuing indemnity in favor of Seller and its Members in accordance herewith for any liabilities arising or incurred by Seller and its Members as a result of such third party's default of any rights and/or obligations arising under the Grant. The Parties expressly agree and acknowledge that Seller and its Members may be subject to liability to the City of Chicago or other third party regardless of the actions and/or omissions of Buyer and that Buyer shall not be liable under this Section 3.9 for any liability of Seller to the City of Chicago or such third party unless it is directly caused by Buyer's act or omission with regard to Buyers obligations under the Grant.

3.11    The terms and conditions of this Agreement shall remain and be considered confidential by the Parties.

3.12    The Parties acknowledge that each have been represented by independent legal counsel in this transaction, and/or have been advised to use their own independent legal counsel.

3.13    This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all counterparts, when taken together will constitute one and the same Agreement.

[SIGNATURE PAGE FOLLOWS]

DATED: 04/17/2013

AGREED TO: Timothy Mason

_____
350 GREEN, LLC.

DATED: 04/17/2013

AGREED TO: BRian Howe

_____
JNS POWER & CONTROL SYSTEMS INC.

WEST\240769906.4

## EXHIBIT 2.1

List of 168 completed property sites:

| Host | Address | Type of Charger | Number of Chargers |
|------|---------|-----------------|--------------------|
| Zipcar | 10 & 30 South Wacker Drive, Chicago, IL 60606 | Coulomb | 1 |
| Airport - O'Hare | 10000 Bessie Coleman Dr., Chicago, IL 60666 | Coulomb | 2 |
| Oasis | 10201 Belle Plaine Ave., Schiller Park, IL 60176 | Efacec | 2 |
| Walgreens | 10345 W. Roosevelt Rd., Westchester, IL 60154 | Efacec | 1 |
| Whole Foods | 1101 S. Canal St., Chicago, IL 60607 | Coulomb | 2 |
| Walgreens | 111 S. Halsted St., Chicago, IL 60661 | AV | 2 |
| Standard Parking | 1130 S. Michigan Ave., Chicago, IL 60605 | Coulomb | 1 |
| Walgreens | 12 N. Northwest Hwy., Palatine, IL 60074 | Coulomb | 3 |
| Sears | 1334 E. 79th St., Chicago, IL 60619 | Coulomb | 2 |
| Standard Parking | 1350 N. Lake Shore Dr., Chicago, IL 60610 | Coulomb | 1 |
| Oasis | 13783 W Oasis Service Rd, Lake Forest, IL 60045 | Efacec | 2 |
| Walgreens | 15 N. Buffalo Grove Rd., Buffalo Grove, IL 60089 | Coulomb | 2 |
| Walgreens | 15 S. Orchard Dr., Park Forest, IL 60466 | Coulomb | 2 |
| Simon | 1500 N Larkin, Joliet, IL 60431 | Coulomb | 2 |
| Walgreens | 1520 W. Fullerton Ave., Chicago, IL 60614 | 1 Efacec / 2 AV | 3 |
| Whole Foods | 1550 N. Kingsbury St., Chicago, IL 60642 | 1 Efacec / 2 Coulomb | 3 |
| Walgreens | 16 E. Lake St., Addison, IL 60101 | Coulomb | 2 |
| Simon | 1600 North State Rt 50, Rm 590, Bourbonnais, IL 60914 | Coulomb | 2 |
| Sears | 1601 N. Harlem Ave., Chicago, IL 60707 | Coulomb | 2 |
| Walgreens | 1627 N. Pulaski Rd., Chicago, IL 60639 | Coulomb | 2 |
| Walgreens | 1649 W. Belmont Ave., Chicago, IL 60657 | Coulomb | 2 |
| Simon | 1650 Premium Outlet Boulevard, Aurora, IL 60504 | Coulomb | 2 |
| Walgreens | 1825 Willow Rd., Northfield, IL 60093 | Coulomb | 2 |
| Walgreens | 200 Wilmot Road, Deerfield, IL 60015 | Coulomb | 1 |
| Walgreens | 2001 N Milwaukee Ave., Chicago, IL 60647 | Coulomb | 2 |
| Zipcar | 210 N. Wells St., Chicago, IL 60606 | Coulomb | 1 |
| Standard Parking | 222 W. Huron St., Chicago, IL 60654 | Coulomb | 2 |
| Walgreens | 225 Milwaukee Ave, Lincolnshire, IL 60069 | Coulomb | 1 |

| Walgreens | 2301 W. Irving Park Road, Chicago, IL 60615 | Coulomb | 2 |
| Golf Mill Mall | 239 Golf Mill Center, Niles, IL 60714 | Efacec | 3 |
| Zipcar | 260 E. Chestnut St., Chicago, IL 60611 | Coulomb | 1 |
| Illinois Tollway Authority | 2700 Ogden Ave, Downers Grove, IL 60515 | Coulomb | 2 |
| Walgreens | 2744 N California, Chicago, IL 60647 | Coulomb | 1 |
| Simon | 288 Orland Square, Orland Park, IL 60462 | Coulomb | 2 |
| Whole Foods | 30 W. Huron St., Chicago, IL 60654 | 1 Efacec / 2 Coulomb | 3 |
| Walgreens | 3019 W Peterson, Chicago, IL 60659 | AV | 2 |
| I-Go (IIT) | 3201 S. State St., Chicago, IL 60616 | Coulomb | 2 |
| Standard Parking | 321 E. Erie St., Chicago, IL 60611 | Coulomb | 2 |
| Walgreens | 3222 N. Milwaukee Avenue, Chicago, IL 60618 | Coulomb | 2 |
| Whole Foods | 3300 N. Ashland Ave., Chicago, IL 60657 | Coulomb | 2 |
| City of Berwyn | 3320 Grove Ave., Berwyn, IL 60402 | Coulomb | 3 |
| Simon | 3333 West Touhy Avenue, Lincolnwood, IL 60712 | Coulomb | 2 |
| I-Go | 3400 N. Western Ave., Chicago, IL 60618 | Efacec | 1 |
| I-Go | 3630 N. Southport Ave., Chicago, IL 60613 | Coulomb | 1 |
| Simon | 364 West Army Trail Road, Bloomingdale, IL 60108 | Coulomb | 2 |
| Whole Foods | 3640 N. Halsted St., Chicago, IL 60613 | 1 Efacec / 2 Coulomb | 3 |
| Walgreens | 375 E Dundee Rd, Palatine, IL 60074 | AeroVironment | 3 |
| Zipcar | 400 N. McClurg Ct., Chicago, IL 60611 | Coulomb | 1 |
| Walgreens | 4385 S Archer, Chicago, IL 60632 | Coulomb | 2 |
| Standard Parking | 4440 W. 95th St., Oak Lawn, IL 60453 | Coulomb | 2 |
| Sears | 4730 W. Irving Park Rd., Chicago, IL 60641 | Coulomb | 1 |
| Walgreens | 4748 W North Ave, Chicago, IL 60639 | AV | 2 |
| Citgo | 501 Dundee Rd., Northbrook, IL 60062 | Efacec | 1 |
| Walgreens | 5158 N Lincoln, Chicago, IL 60625 | 1 Efacec / 2 Coulomb | 3 |
| Zipcar | 525 W. Monroe Street, Chicago, IL 60661 | Coulomb | 1 |
| Walgreens | 5440 N. Clark St., Chicago, IL 60640 | Coulomb | 2 |
| Airport - Midway | 5600 S. Cicero Ave., Chicago, IL 60638 | 1 Efacec / 2 AV / 4 Coulomb | 7 |
| Walgreens | 5625 N Ridge, Chicago, IL 60660 | 1 Efacec / 2 Coulomb | 3 |
| Walgreens | 5753 N Canfield, Chicago, IL 60631 | Coulomb | 2 |
| Walgreens | 6 E North Ave, Northlake, IL 60164 | Coulomb | 2 |

| | | 1 Efacec / 2 Coulomb | 3 |
|---|---|---|---|
| Whole Foods | 6020 N. Cicero Ave., Chicago, IL 60646 | Coulomb | |
| Walgreens | 6140 N Western, Chicago, IL 60659 | Coulomb | 1 |
| Simon | 6170 W. Grand Avenue, Gurnee, IL 60031 | Coulomb | 2 |
| Walgreens | 655 Elm Pl, Highland Park, IL 60035 | Coulomb | 1 |
| Oasis | 700 East Tri-State Toll Road, South Holland, IL 60473 | Efacec | 2 |
| City of Berwyn | 7003 Ogden Ave., Berwyn, IL 60402 | Coulomb | 1 |
| UIC | 701 W. Maxwell St., Chicago, IL 60607 | 1 Efacec / 3 Coulomb | 4 |
| Walgreens | 7200 W Roosevelt Rd, Forest Park, IL 60130 | Coulomb | 1 |
| Village of Forest Park | 7432 Madison St., Forest Park, IL 60130 | Coulomb | 1 |
| Standard Parking | 7474 N Rogers, ChicagoIL | Coulomb | 2 |
| Standard Parking | 750 N Rush Ave, Chicago, IL 60611 | Coulomb | 2 |
| Whole Foods | 750 N. Martingale Rd., Schaumburg, IL 60173 | Coulomb | 3 |
| UIC | 760 W. Taylor St., Chicago, IL 60607 | Coulomb | 3 |
| Walgreens | 811 West Madison St., Oak Park, IL 60302 | AeroVironment | 2 |
| Whole Foods | 840 Willow Rd., Northbrook, IL 60062 | Efacec | 3 |
| Standard Parking | 875 N Michigan, ChicagoIL | Coulomb | 2 |
| Walgreens | 900 Dodge Avenue, Evanston, IL 60202 | Coulomb | 2 |
| I-Go | 900 S. Clark St., Chicago, IL 60605 | Coulomb | 1 |
| UIC | 915 S. Paulina St., Chicago, IL 60612 | Coulomb | 3 |
| Walgreens | 930 Elk Grove Town Center, Elk Grove, IL 60007 | Coulomb | 2 |
| US Equity | 939 W. North Ave., Chicago, IL 60642 | Coulomb | 1 |
| Simon | 96 River Oaks Center Dr, Calumet City, IL 60409 | Coulomb | 2 |
| Oasis | 960 S. Mount Prospect Rd., Des Plaines, IL 60018 | Efacec | 2 |
| I-Go | 1401 W. Devon Ave., Chicago, IL 60660 | Coulomb | 2 |
| Total | | | 168 |

EXHIBIT 2.2 Grant Agreement

## Contract Summary Sheet

Contract (PO) Number: 23610

Specification Number: 92034

Name of Contractor: 350 GREEN LLC

City Department: DEPARTMENT OF ENVIRONMENT

Title of Contract: PHV CHARGING INFRASTRUCTURE PROJECT

Term of Contract: Start Date: 10/19/2010
End Date: 12/31/2013

Dollar Amount of Contract (or maximum compensation if a Term Agreement) (DUR): $1,911,000.00

Brief Description of Work: PHV CHARGING INFRASTRUCTURE PROJECT

Procurement Services Contract Area: COMPTROLLER-OTHER

Vendor Number: 54411024
Submission Date:

NOV 1 6 2010

 **Illinois Department of Commerce & Economic Opportunity**

Pat Quinn, Governor • Warren Ribley, Director

November 9, 2010

Suzanne Malec-McKenna
Commissioner, Dept. of Environment
City of Chicago
30 North LaSalle Street
Suite 2501
Chicago, IL 60602-2583

Dear Ms. Malec-McKenna:

The Department of Commerce and Economic Opportunity (DCEO) would like to welcome you to our community of grantees, and congratulate you on your grant award (10-203827). You are now an active participant in the process of working toward the accomplishment of the economic development goals of the State of Illinois, DCEO, and your own organization.

DCEO is the lead state agency responsible for improving Illinois' competitiveness in the global economy. Guided by an innovative regional approach, DCEO administers a wide range of economic and workforce development programs, services and initiatives designed to create and retain high quality jobs and build strong communities. DCEO leads the Illinois economic development process in partnership with businesses, local governments, workers and families.

This "Welcome Package" is intended to provide you with critical information about and requirements of your grant award. Your success in accomplishing the goals and objectives agreed to and stated in your grant agreement is our interest in working toward DCEO's economic development mission for the State of Illinois. To assure your success and to provide accountability for the funds entrusted to DCEO, we will review your grant's progress toward the achievement of goals and will provide oversight of grant-related deliverables and expenditures. DCEO will make every effort to provide you with the information and assistance you need to reach your goals and to maintain compliance with your grant responsibilities. It is our hope that you will contact us when you have questions or concerns about complying with the requirements or terms and conditions of the grant agreement.

To facilitate ongoing communication and to provide you with an electronic means to submit your reports, grantees with Internet access are encouraged to use email to submit your reports, documentation and other correspondence. Additional general information is available at the DCEO Office of Accountability's website (http://www.ildceo.net/accountability) to assist you in the management and administration of your grant. Grantees without Internet access will need to use other traditional means of communication with their assigned grant manager.

Once again, we congratulate you on your grant award and look forward to working in partnership with you to achieve our economic development goals.

Sincerely,

Warren Ribley
Director

www.ildceo.net

500 East Monroe                          James R. Thompson Center            2309 West First Street
Springfield, Illinois 62701-1643         100 West Randolph Street, Suite 3-400 Marion, Illinois 62959-1180
217/782-7500 • TDD 800/785-6055          Chicago, Illinois 60601-3219         618/997-4394 • TDD 800/785-6055
                                         312/814-7179 • TDD 800/785-6055

Printed on Recycled and Recyclable Paper

## EXHIBIT 2.6A Creditors of Seller

| Creditor | Amount |
|---|---|
| Ace of Spray, LLC | 9130.00 |
| ACS - Efacec | 30076.62 |
| Aeris Communications | 364.28 |
| Aerovironment | 22966.68 |
| B-MAX INC | 190385.00 |
| Balanced Environments | 0.00 |
| ComEd | 3297.31 |
| Continental Electrical Construction Co. LLC | 277948.90 |
| Coulomb Technologies | 15600.32 |
| Efacec | 663000.00 |
| Gatwood | 10510.00 |
| Hardt Electric, INC | 8945.52 |
| JNS Power | 159926.90 |
| Litgen Concrete Cutting | 24825.00 |
| Notes -- 360Green | 61525.20 |
| RJ Underground, Inc | 73900.00 |
| We-Boro-It | 7840.00 |
| Uni Group | 6810.00 |
| Wilson Sonsini | 50000.00 |
| Total | 1,617,040.73 |

## EXHIBIT 2.6B, Release

## DRAFT SETTLEMENT AGREEMENT AND MUTUAL RELEASE

THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE (the "Agreement") is entered into this _____ day of April, 2013, by and between JNS POWER & CONTROL SYSTEMS, INC. (JNS) and _____ [Contractor] all of whom are referred to collectively as the "Parties."

### RECITALS

WHEREAS, JNS and contractor have agreed to settle and resolve the contract claim involving the provision of either labor and or materials to 350 Green LLC at numerous project sights;

WHEREAS, contractor seeks to resolve its claim with 350 Green LLC and to have no further rights or causes of actions against 350 Green LLC or 350Green members, specifically Mariana Gerzanych and Tim Mason ("Members") related to the Grant project with the City of Chicago.

WHEREAS, this Agreement is conditioned upon the City of Chicago approving the sale of the Assets from 350 Green LLC to JNS; contractor acknowledges that unless this condition is satisfied, the terms of the Settlement between the parties will become null and void;

NOW, THEREFORE, for and in consideration of the mutual promises, covenants and undertakings hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

### TERMS OF AGREEMENT

**Recitals and Definitions.** The foregoing Recitals and Definitions are an integral part of this Agreement and are incorporated herein by reference.

**No Admission of Liability.** The Parties expressly understand and agree that this Agreement is a compromise of unproven and disputed claims, and that the settlement and resolution set forth herein, the payment of any sum hereunder, and the taking of any action pursuant hereto, do not constitute, and shall not be construed as, an admission of liability by any party hereto. Each party expressly denies any liability, and it is expressly understood and agreed that the purpose of this Agreement is merely to avoid the expense and uncertainty of further litigation.

### Mutual Releases.

By executing this the parties, on behalf of themselves and their agents, attorneys, representatives, successors, and assigns fully, finally, and forever release and discharge each other, and each of their respective current and former managers, members, partners, employees, trustees, officers, directors, shareholders, members, subsidiaries, affiliates, insurers, agents, attorneys, accountants, successors, assigns, and all those in privity therewith, jointly and severally, from any and all actions, causes of action or claims of any type or description, whether known or unknown, including but not limited to, claims for actual damages, statutory damages, punitive damages, disgorgement, equitable relief, public or private injunctive relief, reimbursement, restitution, costs, or attorneys' fees, that were asserted or could have been asserted in relation to the contract between contractor and 350 Green LLC for the materials and or labor provided to 350 Green LLC which is outlined on the attached Exhibit "A" that did exist or may have existed at any time prior to the execution of this Agreement, whether arising under or based on any law, rule, regulation, statute or common law of the United States or any state thereof, or any law, rule, regulation, statute or common law of any other country, or under any agreement or contract or any other

source, for any amount or remedy whatsoever.

**Payment.** In consideration of the settlement and mutual releases set forth in this Agreement and other good and valuable consideration, JNS agrees to make a settlement payment to contractor in the total amount of which is hereinafter referred to as "Settlement Payment." The Settlement Payment shall be tendered by JNS to contractor on or before _____, 2013.

**Assignment.** Contractor assigns all right, title and interest in its contract with 350 Green LLC to JNS instanter and any and all warranties or guarantees related to said labor or materials are herby assigned by contractor to JNS.

**Release of Lien and Tender of Final Waiver:** In exchange for the settlement payment contractor shall tender to JNS at the time of payment a Final Waiver of Lien and Release of Lien.

## General Provisions.

**Independent Representation.** In connection with the negotiation, drafting and execution of this Agreement, the Parties have been represented by their own independent legal counsel.

**Collaborative Drafting.** This Agreement represents the collaborative drafting of the parties through their respective attorneys. Accordingly, neither this Agreement nor any provision of this Agreement shall be deemed to have been drafted by any one party or that party's attorney.

**Agreement Complete.** This Agreement is complete and reflects all of the agreements, representations and warranties between the Parties.

**No Reliance.** The Parties represent and warrant to each other that none of them have relied upon any representation or warranty made by any party, whether orally or in writing, pertaining to the matters set forth in this transaction, except to the extent that such representation or warranty is expressly set forth in the terms of this Agreement.

**No Amendment Except in Writing.** This Agreement may only be amended, changed or modified by a writing executed by the Parties.

**Binding on Successors And Assigns.** This Agreement is binding upon the successor and assigns of the Parties. The Parties represent and warrant that there has been no assignment or other transfer of any interest in any claims that they might have or may have had against each other.

**Illinois Law.** This Agreement is deemed to have been entered into at Cook County, Illinois and shall be governed by the laws of the State of Illinois.

**Headings.** The headings set forth in this Agreement are for the convenience of the parties and should not be consulted in connection with the interpretation of this Agreement.

**Counterparts.** This Agreement may be executed in counterparts each of which shall be deemed original and all of which taken together shall constitute the full Settlement Agreement. Any counterpart of this agreement may be executed via facsimile.

**J.     THE UNDERSIGNED ARE OF LEGAL AGE AND UNDER NO DISABILITY AND HAVE HAD A FULL OPPORTUNITY TO SEEK ADVICE FROM AND CONSULT WITH COUNSEL OF THEIR OWN SELECTION. THE UNDERSIGNED HAVE READ THE ABOVE AND FOREGOING AND FULLY UNDERSTAND THE LEGAL EFFECT THEREOF. THE**

**UNDERSIGNED ALSO WARRANT THAT THEY HAVE THE AUTHORITY TO ENTER INTO THIS AGREEMENT ON BEHALF OF THEIR RESPECTIVE ENTITIES.**

**K.** **Miscellaneous.** In connection with the negotiation, drafting, and execution of this Agreement, the Parties their have been represented by own independent legal counsel.

**L.** **Miscellaneous.** The Parties represent and warrant to each other that none of them have relied upon any representation or warranty made by any party, whether orally or in writing pertaining to the matters set forth in this transaction, except to the extent that such representation or warranty is expressly set forth in the terms of this Agreement.

**M.** **Confidentiality.** The terms and conditions of this Agreement shall remain and be considered confidential by all parties and shall not be disclosed to any other party without court order.

JNS Control Systems, Inc.

By: _____
Its: _____

Date: _____


Contractor

By_____
Its: _____                    Its: _____
Date: _____              Date: _____


PREPARED BY:
Colleen M. Loftus
Loftus & Loftus, Ltd.
646 Busse Highway
Park Ridge, IL 60068
(847) 318-8800
Atty. No. 12494

WEST\240769906.4

**EXHIBIT 3.9A**

| US Equities |
| --- |
| NWU |
| Walgreens |
| 7-Eleven |
| Supervalu |
| EFACEC USA |

**EXHIBIT 3.9B**

| | |
|---|---|
| City of Chicago Department of Environment | Default letter |
| I-Go Car Sharing Construction Service Agreement | Termination letter |
| Walgreens Charging Station License Agreement with 2 Addendums | Notice of breach |
| EFACEC Purchase Agreement | Termination letter |
| ACS/ EFACEC Software contract | Timely payment |
| Village Oak Brook License Agreement | Inadequate insurance |
| CITGO | Inadequate insurance , Electricity reimbursement, revenue Share Payments Lien filed |
| Supervalu | Termination letter |
| City of Berwyn - 7003 Ogden Ave | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| City of Berwyn - 3320 Grove Ave | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| Golf Mills | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| UIC (Maxwell St, Taylor St, Paulina St) | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| US Equities | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| Village Oak Brook License Agreement | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| 7474 Rogers | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| 1130 S Michigan | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| 1350 N LSD | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| 750 N Rush | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| 222 W Huron | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| 875 N Michigan | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| 4440 W 95th St | Lien filed, Inadequate Insurance, Electricity reimbursement, Revenue Share Payments |
| Sears (3 contract locations) | Inadequate Insurance, Electricity reimbursement, Revenue Share Payments |
| 7-Eleven | Liens filed, Inadequate Insurance, Electricity reimbursement, Revenue Share Payments |
| IL Tollway Admin Building | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| Wholefoods 1101 S. Canal St., Chicago, IL 60607 | Inadequate Insurance, Electricity reimbursement, Revenue Share Payments |
| Wholefoods 1111 Chicago Ave., Evanston, IL 60202 | Inadequate Insurance, Electricity reimbursement, Revenue Share Payments |
| Wholefoods 1550 N. Kingsbury St., Chicago, IL 60642 | Lien filed, Inadequate Insurance, Electricity reimbursement, Revenue Share Payments |
| Wholefoods 1640 Chicago Ave., Evanston, IL 60201 | Inadequate Insurance, Electricity reimbursement, Revenue Share Payments |

| | |
|---|---|
| Wholefoods 201 63rd St., Willowbrook, IL 60527 | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| Wholefoods 2607 W. 75th St., Naperville, IL 60540 | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| Wholefoods 30 W. Huron St., Chicago, IL 60654 | Lien filed, Inadequate Insurance, Electricity reimbursement, Revenue Share Payments |
| Wholefoods 3300 N. Ashland Ave., Chicago, IL 60657 | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| Wholefoods 3640 N. Halsted St., Chicago, IL 60613 | Lien filed, Inadequate Insurance, Electricity reimbursement, Revenue Share Payments |
| Wholefoods 6020 N. Cicero Ave., Chicago, IL 60646 | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| Wholefoods 7245 Lake St., River Forest, IL 60305 | Inadequate Insurance, Electricity reimbursement, Revenue Share Payments |
| Wholefoods 750 N. Martingale Rd., Schaumburg, IL 60173 | Lien filed, Inadequate Insurance, Electricity reimbursement, Revenue Share Payments |
| Wholefoods 760 Waukegan Rd., Deerfield, IL 60015 | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| Wholefoods 840 Willow Rd., Northbrook, IL 60062 | Lien filed, Inadequate Insurance, Electricity reimbursement, Revenue Share Payments |
| Zipcar 210 N. Wells St., Chicago, IL 60606 | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| Zipcar 260 E. Chestnut St., Chicago, IL 60611 | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| Zipcar 400 N. McClurg Ct., Chicago, IL 60611 | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| Zipcar 525 W. Monroe Street, Chicago, IL 60661 | Lien filed, Inadequate Insurance, Electricity reimbursement, Revenue Share Payments |
| Zipcar 701 W. Maxwell St., Chicago, IL 60607 | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| Zipcar 760 W. Taylor St., Chicago, IL 60607 | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| Zipcar 915 S. Paulina St., Chicago, IL 60612 | Inadequate insurance, Electricity reimbursement, Revenue Share Payments |
| Zipcar 10 & 30 South Wacker Drive, Chicago, IL 60606 | Lien filed, Inadequate Insurance, Electricity reimbursement, Revenue Share Payments |

# EXHIBIT 3.9C

B-Max Default Judgment

# EXHIBIT C



**City of Chicago**
**Rahm Emanuel, Mayor**

**Department of Law**

Stephen R. Patton
Corporation Counsel

**Aviation, Environmental
Regulatory and Contracts
Division**
**30 North LaSalle Street**
**Suite 1400**
**Chicago, Illinois 60602-2580**

**(312) 744-9010**
**(312) 742-3832 (FAX)**

http://www.cityofchicago.org

BY EMAIL AT CLOFTUS@LOFTUSLOFTUS.COM

April 30, 2013

Colleen M. Loftus
Loftus & Loftus, Ltd.
646 Busse Highway
Park Ridge, IL 60068

     Re:     Asset Purchase Agreement, dated April 17 2013 ("Asset
             Purchase Agreement") between JNS Power & Control
             Systems, Inc. ("JNS") and 350Green, LLC ("350Green")

Dear Colleen:

     This letter is to notify you that the City of Chicago ("City") accepts
the terms and conditions set forth in the Asset Purchase Agreement,
pursuant to Par. 1.4 of that agreement, with the following provision:

-   In Exhibit 2.6A, the amount owed to B-Max, Inc., should read
    $190,825.00

This acceptance is based on our review of the Asset Purchase Agreement
including its exhibits, and the materials your client has provided the City.

     As you know, this acceptance merely fulfils the terms of Par. 1.4 of
the Asset Purchase Agreement, and does not serve to amend the Grant
Agreement between the City and 350Green in any way.

                  Very truly yours,

                  Amber Achilles Ritter
                  Senior Counsel
                  (312) 744-5218

cc:    Samantha Bingham