IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JNS POWER & CONTROL SYSTEMS, INC., an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| Vs. | ) ) | Case No. 13-cv-04020 |
| 350 Green, LLC, a Virginia limited liability company, | ) ) ) | Hon. Robert Dow, Jr. |
| Defendant. | ) ) | |

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

Come now, Defendant 350 Green, LLC ("350 Green" or "Defendant"), by and through its undersigned counsel, and files its Answer and Affirmative Defenses to Plaintiff  JNS Power & Control Systems, Inc., ("JNS" or "Plaintiff")'s Complaint [D.E. #1], and states:

## JURISDICTION AND VENUE

1.      Jurisdiction is proper in this Court, on Count I of this Complaint, pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between all parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction on Count II of this Complaint, pursuant to 28 U.S.C. § 1367.

Response:      Defendant admits the allegations in Paragraph 1 of Plaintiff's Complaint.


2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), as the contract at issue was entered into and the goods at issue are located within this District.

Response:      Defendant admits the allegations in Paragraph 2 of Plaintiff's Complaint.

## THE PARTIES

3.      Plaintiff JNS Power & Control Systems, Inc. ("JNS"), is an Illinois corporation with a principal place of business in Arlington Heights, Illinois.

Response:      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3 of Plaintiff's Complaint.

4.      Defendant 350 Green, LLC ("350 Green") is a Virginia limited liability company with principal places of business in California.

Response:      Defendant admits that it is a Virginia limited liability company, but denies that its principal place of business is in California.

## BACKGROUND FACTS

5.      JNS is a service provider for electric vehicle ("EV") charging stations.

Response:      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5 of Plaintiff's Complaint.

6.      In December 2012, JNS and 350 Green, a company that also installs and provides service for EV charging stations, entered into negotiations for JNS's purchase of certain assets of 350 Green, namely: one-hundred-sixty-eight (168) completed and installed electric car chargers and fifty-one (51) Coulomb or equivalent Level II Chargers (the "Chargers").

Response:      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6 of Plaintiff's Complaint.

7.     The one-hundred-sixty-eight (168) completed and installed electric car chargers are unique in nature as each had been previously installed at locations throughout the Chicago area.

Response:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 of Plaintiff's Complaint.

8.     On or about February 11, 2013, JNS and 350 Green entered into a Formal Letter of Intent ("LOI") for JNS to acquire the Chargers and the right to request the consent of the City of Chicago to assign the existing Grant Agreement from 350 Green. A true and accurate copy of the LOI is attached hereto as Exhibit A.

Response:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8 of Plaintiff's Complaint.

9.     On or about April 17, 2013, JNS and 350 Green ultimately entered into an Asset Purchase Agreement ("APA"). A true and accurate copy of the APA is attached hereto as Exhibit B.

Response:     Defendant denies the allegations set forth in Paragraph 9 of Plaintiff's Complaint.

10.     The Purchase terms of the APA are set forth in Article 2 and required JNS and 350 Green to perform as follows:

2.2 [350 Green] shall assign all of its contractual rights and interest in the Department of Energy First Amended and Restated Grant Agreement Award No. DE-EE0002541, with the City of Chicago to [JNS] ("Grant").

2.3 [350 Green] shall issue to [JNS] a Bill of Sale, an Assignment of all existing warranties or guarantees and any other documentation necessary to transfer ownership in this property to [JNS].

2.4 [350 Green] shall also assign to [JNS] any license, easement, rental, leases, or permit agreements currently in existence or to be negotiated with the property owners for the sites where the chargers are currently installed or to be installed.

2.5 [350 Green] shall transfer rights to [JNS] for fifty-one (51) Coulomb Chargers or equivalent on the date of closing.

2.6 For and in consideration of the purchase of the above assets, [JNS] shall: (a) complete the Grant work that remains unfinished pursuant to the City's directive and instruction consistent with the terms of the Grant agreement (Exhibit 2.2); and (b) [JNS] will settle, pay or negotiate with all unpaid creditors of [350 Green] from the project related to Exhibit 2.6A that are directly related to the City of Chicago grant-related funds and obtain releases from the same.

2.7 [350 Green] shall assign and [JNS] shall accept and acknowledge the assignment of all Licenses for locations of the assets set forth in Exhibit 2.1. [350 Green] shall provide any and all Licensor consents required pursuant to such Licenses. If needed, [350 Green] will assist in transfer of unsigned license agreements, provide contact information and make email introductions to potential and existing hosts. [350 Green] will also make introductions to existing charging stations manufacturers and network operators.

<u>Response</u>:   Defendant admits only that Article 2 of Exhibit B is entitled "Purchase Terms."  Defendant denies the remaining allegations of Paragraph 10.


11.   The cost of JNS's performance to complete the Grant work that remains unfinished and to settle, pay, or negotiate with all unpaid creditors, as required by the APA, is greater than $75,000.00.

<u>Response</u>:   Defendant admits the allegations set forth in paragraph 11 of Plaintiff's Complaint.

4

12.     The value of the one-hundred-sixty-eight (168) completed and Installed electric car chargers and the fifty-one (51) Coulomb or equivalent Level II Chargers described in Section 2.5 of the APA is greater than $75,000.00.

Response:     Defendant admits the allegations set forth in paragraph 12 of Plaintiff's Complaint.

13.     The APA was "contingent upon the City of Chicago's agreement to allow [350 Green] to assign the remaining benefits and obligations associated with the Grant to [JNS] prior to the closing of the transaction or concurrent with this transaction." Exhibit B, ¶2.10. The value of the City of Chicago Grant is greater than $75,000.00.

Response:     Defendant admits only that the total value of the City of Chicago Grant is greater than $75,000 and denies the remaining allegations of Paragraph 13 of Plaintiff's Complaint.

14.     In Paragraph 3.9 of the APA, 350 Green affirmed the following:

[350 Green] has the necessary power, authority and capacity to enter into this Agreement and carry out [350 Green's] obligations contemplated hereby, without the necessity of any act or consent except as provided in Exhibit 3.9A of any other person or entity, and that this Agreement constitutes a legal, valid and binding obligation of [350 Green], enforceable against [350 Green] in accordance with its terms.

Response:     Defendant admits only that Paragraph 3.9 of Exhibit B contains the language quoted in Paragraph 10 of Plaintiff's Complaint, but  Defendant denies the remaining allegations of Paragraph 10.

15.     As early as December 2012, JNS inquired as to the necessary requirements of the City of Chicago to obtain their consent to the assignment of the Grant benefits and obligations to JNS from 350 Green and took steps to fulfill each of the City of Chicago's requirements.

5

Response: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15 of Plaintiff's Complaint.

16.     On April 30, 2013, via a letter from Amber Achilles Ritter, the City of Chicago granted its approval of the APA and assignment of the Grant benefits and obligations to JNS. A true and accurate copy of the April 30, 2013 letter is attached hereto as Exhibit C.

Response: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16 of Plaintiff's Complaint.

17.     The APA states that the Closing would take effect in two phases: (1) upon signing the Agreement; and (ii) when the contingencies set forth in this Agreement have been satisfied." Exhibit B, ¶2.12.

Response: Defendant admits that ¶2.12 of Exhibit B includes the language quoted in Paragraph 17 of Plaintiff's Complaint, but denies the remaining allegations set forth in Paragraph 17.

18.     JNS satisfied all contingencies and obligations required by the APA.

Response: Defendant denies the allegations set forth in Paragraph 18 of Plaintiff's Complaint.

19.     On May 6, 2013, JNS sent a demand letter to 350 Green requesting 350 Green perform fully in accordance with the terms of the APA.

<u>Response</u>:      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 of Plaintiff's Complaint.

20.      To date, 350 Green has failed to perform as required by the APA and has failed to provide JNS with any grounds that would explain or excuse 350 Green's failure to perform.

<u>Response</u>:      Defendant denies the allegations set forth in Paragraph 20 of Plaintiff's Complaint.

**<u>COUNT I</u>**
**(Breach of Contract – Specific Performance)**

21.      Plaintiff hereby incorporates by referenced Paragraphs 1 – 20, as if fully restated herein.

<u>Response</u>:      In response to Paragraph 21 of Plaintiff's Complaint, Defendant incorporates by reference all responses from Paragraphs 1-20 as if fully set forth herein.

22.      The APA constitutes a valid and enforceable contract between JNS and 350 Green.

<u>Response</u>:      Defendant denies the allegations set forth in Paragraph 22 of Plaintiff's Complaint.

23.      JNS fully and timely performed under the terms of the APA.

<u>Response</u>:      Defendant denies the allegations set forth in Paragraph 23 of Plaintiff's Complaint and demands strict proof thereof.

24.     350 Green has failed or refused to perform its obligations under the APA. Specifically, 350 Green has failed to:

>     (a)     Deliver assignments of or a consent to the Assignments of all licenses for the locations listed in the APA Section 2.1, as well as any licenses, easements, rentals, leases or permit agreements currently in existence or to be negotiated with property owners for the sites currently installed or to be installed;
>     (b)     Deliver a Bill of Sale and an Assignment of all existing warranties or guarantees including any other necessary documentation necessary to transfer the ownership of all assets including the one hundred sixty eight (168) completed and installed electric car chargers and fifty one (51) Coulomb or equivalent Level II Chargers to JNS, as provided for in the APA; and
>     (c)     Provide a full release and Indemnification from 350Green for all claims, agreements, debts, expenses and related charges between 350Green and Actium Power.

*See* Exhibit B, Sec. 2.

Response:     Defendant denies the allegation set forth in Paragraph 24 of the Complaint.

25.     The one hundred and sixty-eight (168) chargers which have been installed under licenses at specific locations are unique and cannot be removed or otherwise replaced without materially affecting the consideration contemplated by the parties to the APA. Exhibit B, ¶2.1; Ex. 2.1.

Response:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25 of Plaintiff's Complaint.

26.     The remaining fifty-one (51) chargers identified in the APA were an integral part of the consideration contemplated by the parties and cannot be replaced. Exhibit B, ¶2.1.

Response:     Defendant denies the allegations set forth in Paragraph 26 of Plaintiff's Complaint.

27.     Assignment and ownership of the Chargers is necessary for JNS to "complete the Grant work that remains unfinished pursuant to the City's directive and instruction consistent to the terms of the Grant agreement," as required by ¶2.6 of the APA.

Response:     Defendant denies the allegations set forth in Paragraph 27 of Plaintiff's Complaint.

28.     As a result of 350 Green's failure to perform under the APA, JNS can neither perform the obligations necessary under the Grant nor receive the benefits of the Grant, as intended by the terms of the APA.

Response:     Defendant denies the allegations set forth in Paragraph 28 of Plaintiff's Complaint.

29.     Monetary damages are inadequate for JNS, as monetary damages based on 350 Green's failure to perform are difficult to quantify.

Response:     Defendant denies the allegations set forth in Paragraph 29 of Plaintiff's Complaint.

## COUNT II
### (Breach of Contract – Indemnification)

30.     Plaintiff hereby incorporates by referenced Paragraphs 1 – 20, as if fully restated herein.

Response:     In response to Paragraph 30 of Plaintiff's Complaint, Defendant incorporates by reference all responses from Paragraphs 1-20 as if fully set forth herein.

31.     The APA constitutes a valid and enforceable contract between JNS and 350

Green.

Response:     Defendant denies the allegations set forth in Paragraph 31 of Plaintiff's

Complaint.


32.     JNS fully and timely performed under the terms of the APA.

Response:     Defendant denies the allegations set forth in Paragraph 32 of Plaintiff's

Complaint.


33.     Pursuant to Paragraph 3.2, 350 Green agreed to indemnify JNS as follows:

3.2.     350 Green hereby agrees to defend, hold harmless and expeditiously
indemnify JNS from, against and with respect to any and all liability, claim, loss, damage, obligation, cost or expense arising out of the 350 Green's material breach or violation of any representation, provision, warranty, or covenant contained in this Agreement, including reasonable attorneys' fees, and other reasonable costs incurred in the defense of any legal proceedings asserting such a claim.

3.3.     350 Green hereby agrees to indemnify and hold Buyer harmless                             from                  any
and all liability, action, lawsuit, expenses or damages directly associated with CCGI's failure to close the Equity Exchange Agreement, dated March 8, 2013, with 350 Green; provided, however, that 350 Green shall not indemnify or hold harmless Buyer from any and all liability, action, lawsuit, expenses or damages involving: (a) JNS's independent interaction with CCGI that was initiated either: (i) by JNS with CCGI or (ii) by CCGI with JNS, or (b) JNS's independent interaction with any third party such as the City of Chicago and EFACEC, in relation to the Grant. Seller further agrees to indemnify and hold JNS harmless from any and all liability, action, lawsuit, expenses or damages directly in relation to any and all creditors of Seller who have been identified by 350 Green and disclosed by 350 Green to JNS in relation to the Grant and as set forth in Exhibit 2.6A

Response:       Defendant admits that ¶3.2 of Exhibit B includes the language quoted in Paragraph 33 of Plaintiff's Complaint, but denies the remaining allegations set forth in Paragraph 33.

34.     On April 10, 2013, the Car Charging Group, Inc. ("CCGI"), filed a complaint in the District Court for the Southern District of New York, which named JNS and JNS Holding Corporation as defendants (SDNY Case. No. 13cv2389) ("SDNY Complaint").

Response:       Defendant denies that JNS Power was named as a Defendant in the SDNY Complaint but admits the  remaining allegations set forth in Paragraph 34 of Plaintiff's Complaint.

35.     JNS incurred expenses and attorney's fees and costs in defense of the SDNY Complaint totaling in excess of $15,000.00.

Response:       Defendant denies the allegations set forth in Paragraph 35 of Plaintiff's Complaint.

36.     350 Green agreed to indemnify and hold harmless JNS from "any and all liability, action, lawsuit, expenses or damages directly associated with" the SDNY Complaint.

Response:       Defendant denies the allegations set forth in Paragraph 36 of Plaintiff's Complaint.

37.     On May 2, 2013, JNS was served with a complaint filed by CCGI, in the District Court for the Northern District of Illinois, on April 25, 2013 ("CCGI Complaint").

11

Response:     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 37 of Plaintiff's Complaint.

38.     The CCGI Complaint names JNS and JNS Holding Corporation as defendants and asserts claims for tortious interference with contractual relations and seeking a declaratory judgment finding the APA null and void.

Response:     Defendant admits the allegations set forth in Paragraph 40 of Plaintiff's Complaint.

39.     JNS has incurred expenses and attorney's fees and costs as a result of the CCGI Complaint.

Response:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 39 of Plaintiff's Complaint.

40.     On April 29, 2013, JNS sent a demand letter to 350 Green requesting 350 Green indemnify JNS as required by the terms of the APA, with respect to both the SDNY Complaint and the CCGI Complaint.

Response:     Defendant admits the allegations set forth in Paragraph 40 of Plaintiff's Complaint.

41.     To date, 350 Green has failed or refused to indemnify JNS, as required by the APA.

Response:   Defendant admits that it has refused to indemnify JNS, but denies that it is required to do so.

42.   JNS has incurred expenses and attorney's fees and costs as a result of 350 Green's material breach of the APA.

Response:   Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 41of Plaintiff's Complaint.

43.   As a result of 350 Green's failure to indemnify JNS, JNS has incurred, and will continue to incur, damages, expenses, and attorney's fees and costs associated with both the SDNY Complaint and the CCGI Complaint, as well as the instant complaint.

Response:   Defendant denies the allegations set forth in Paragraph 43 of Plaintiff's Complaint.

**AFFIRMATIVE DEFENSES**

1.   As to its First Affirmative Defense, Plaintiff's claims are barred against Defendant due to Plaintiff's failure to state a claim upon which relief can be granted.

2.   As to its Second Affirmative Defense, Plaintiff's claims are barred against Defendant, in whole or in part, by the doctrine of unclean hands, as Plaintiff had knowledge that Defendant had a prior agreement with Car Charging Group, Inc. ("CCGI") and 350 Holdings, LLC ("350 Holdings"), but nonetheless attempted to enter into the APA with Defendant.

3.   As to its Third Affirmative Defense, Plaintiff's claims are barred against Defendant, in whole or in part, because Plaintiff failed to mitigate its damages.

13

4. As to its Fourth Affirmative Defenses, Plaintiff's claims are barred against Defendant, in whole or in part, because the APA is void as a matter of law.

5. As to its Fifth Affirmative Defenses, Plaintiff's claims are barred against Defendant, in whole or in part because at the time Plaintiff entered into the APA with Defendant, Plaintiff had knowledge that Defendant had a prior agreement with CCGI and 350 Holdings.

6. As to its Sixth Affirmative Defense, Plaintiff's claims are barred against Defendant, in whole or in part, because Defendant had no legal capacity to enter into the APA, and Plaintiff had knowledge of same.

7. As to its Seventh Affirmative Defense, Plaintiff's claims in Count II, Indemnification, are barred against Defendant, in whole or in part, because Plaintiff was not a party to the SDNY Complaint filed by CCGI and 350 Holdings and therefore did not incur any attorney's fees and costs for same.

8. As to its Eighth Affirmative Defense, Plaintiff's claims in Count II, Indemnification, are barred against Defendant, in whole or in part, because the APA was executed after CCGI and 350 Holdings filed and served JNS Holdings Corp. with the SDNY Complaint.

9. As to its Ninth Affirmative Defense, Plaintiff's claims are barred against Defendant, in whole or in part, for failure to satisfy conditions precedent set forth in the APA.

10. As to its Tenth Affirmative Defense, Plaintiff's claims are barred against Defendant, in whole or in part, for lack of privity of contract, as there was no valid agreement between Plaintiff and Defendant.

11. As to its Eleventh Affirmative Defense, Plaintiff's claims are barred against Defendant, in whole or in part, based on waiver and estoppel, as Plaintiff waived any rights it

had against Defendant when it entered into the APA knowing that Defendant had a prior agreement with CCGI and 350 Holdings.

12. As to its Twelfth Affirmative Defense the extent the Court determines the APA is valid, Plaintiff's claims are barred against Defendant, in whole or in part, based on Plaintiff's breach of contract, in particular Section 2.12 of the APA.


WHEREFORE, Defendant requests that Plaintiff's Complaint be dismissed with prejudice and that the Court award Defendant reasonable attorney's fees and costs and all other relief that this Court deems to be just and proper.


Dated: June 21, 2013                    Respectfully submitted,


                                        Defendant 350 Green, LLC

                                        By:    *s/Michael I. Bernstein*
                                               One of its attorneys


Michael I. Bernstein, admitted *pro hac vice*
The Bernstein Law Firm
1688 Meridian Avenue, Suite 418
Miami Beach, Florida 33139
Telephone: (305) 672-9544
Facsimile: (305) 672-4572
e-mail: michael@bernstein-lawfirm.com

Steven L. Baron (ARDC No. 6200868)
Natalie A. Harris (ARDC No. 6272361)
Mandell Menkes LLC – Firm No. 38081
One North Franklin Street, Suite #3600
Chicago, Illinois 60606
Telephone: (312) 251-1000
Facsimile: (312) 251-1010
e-mail: sbaron@mandellmenkes.com
e-mail: nharris@mandellmenkes.com

### CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he caused to be filed the aforementioned document, electronically, with United States District Court for the Northern District of Illinois, on June 21, 2013, which will be served via ECF on all counsel of record.

s/  Michael I. Bernstein